United States District Court
Southern District of Texas
**ENTERED**
February 27, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHARLES RAY BAILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-151 |
| | § | |
| ELIZABETH HARRIS, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Ray Bailey (TDCJ #01486071), who is currently in the custody of

the Texas Department of Criminal Justice ("TDCJ"), has filed a *pro se* civil rights complaint

alleging that a correctional officer, Defendant Elizabeth Harris,[1] interfered with his medical

care and retaliated against him for his use of the prison grievance process. Bailey has been

granted leave to proceed *in forma pauperis* (Dkt. 43). Harris has filed a motion for summary

judgment, to which Bailey has responded (Dkt. 56 and Dkt. 57). After reviewing all of the

evidence submitted, the parties' briefing, and the applicable law, the Court concludes that

Harris's motion for summary judgment must be **GRANTED** for the reasons that follow.

## I.  BACKGROUND

Bailey is an insulin-dependent diabetic who has also been diagnosed with

hypertension (Dkt. 56-1 at pp. 3–7, 10–11, 22). He receives two insulin shots a day and has

---

[1]  Bailey voluntarily dismissed a second defendant, Brad Livingston, who at the time Bailey
filed his original complaint was the Executive Director of TDCJ (Dkt. 19).

been prescribed a host of other medications (Dkt. 56-1 at pp. 3–7, 10–11, 22). His claims in this case stem from three occasions on which he alleges that his medical care was interrupted by Harris, who often stood a security post in the medical facility at TDCJ's Darrington Unit when Bailey was incarcerated there (Bailey is now at the Ramsey Unit). Bailey claims that the second and third occasions were retaliatory (Dkt. 17 at pp. 2–3).

### February 11, 2012

The first alleged incident took place on February 11, 2012 (Dkt. 17 at p. 1). Bailey handed Harris two lay-in passes giving him permission to enter the unit medical facility (Dkt. 17 at p. 1). The passes indicated that Bailey was to receive an insulin injection and get his toenails clipped (Dkt. 17 at p. 1). Harris allowed Bailey to enter the medical facility's waiting area, and Bailey sat down (Dkt. 17 at p. 1). According to Bailey, "[o]nly a short time later[,]" Harris began tapping on the window of the waiting area and yelling at Bailey (Dkt. 17 at p. 1). Bailey could not understand what Harris was saying on account of the glass barrier, so he left the waiting area to hear her more clearly, whereupon she "stated that [Bailey] had to leave, that [Bailey] could'nt [sic] await treatment, without a logical reason as to why" (Dkt. 17 at p. 1).

Bailey, wanting "[t]o defuse this hostile situation[,]" obeyed Harris's order and left the medical facility without receiving his insulin injection or nail clipping (Dkt. 17 at p. 1). He contacted a superior officer a short time later to see if the officer could get him back into the unit clinic, but the officer said that he was too busy to help (Dkt. 17 at p. 1). Unit medical

records indicate that Bailey did in fact only receive one insulin injection on February 11, 2012 (Dkt. 56-1 at p. 3). Bailey filed a grievance against Harris related to this incident (Dkt. 56-1 at pp. 43–55). The notes from the investigation indicate that a "formal disciplinary was written on [Harris,]" but the notes contain no other information regarding what, if any, disciplinary action was taken against her (Dkt. 56-1 at p. 48).

**February 19, 2012**

The second alleged incident took place about a week later, on February 19, 2012 (Dkt. 17 at p. 2). Bailey entered the medical facility to get an insulin shot and a "walk-in blood pressure check"—he does not mention having a lay-in pass on this occasion (Dkt. 17 at p. 2). Harris, according to Bailey, sent "all other offender's [sic] that arrived after [him] to the back of [the medical] department to recive [sic] their treatment" (Dkt. 17 at p. 2). Bailey "became agitated" and left (Dkt. 17 at p. 2). He again talked to a superior officer, who advised him to return to the medical facility and wait to be treated (Dkt. 17 at p. 2). Bailey returned to the medical facility and asked Harris "if in fact this department were [sic] dispencing [sic] insulin" (Dkt. 17 at p. 2). Harris, "in an aggressive tone[,]" replied that she didn't know (Dkt. 17 at p. 2). Bailey "turned to walk away toward the back of [the medical] department" (Dkt. 17 at p. 2). When he did so, he heard a "laugh of mockery" from Harris (Dkt. 17 at p. 2).

Unit medical records indicate that Bailey only received one insulin injection on February 19, 2012 (Dkt. 56-1 at p. 4). Bailey filed a grievance against Harris related to this

incident (Dkt. 56-1 at pp. 56–66). The notes from the investigation do not indicate that any disciplinary action was taken against Harris—rather, according to the Step 2 grievance response, the investigators found "no evidence to substantiate [Bailey's] allegations" (Dkt. 56-1 at p. 57).

**July 14, 2012**

The last alleged incident took place about five months later, on July 14, 2012 (Dkt. 17 at p. 3). Bailey claims that he was in the unit medical facility with a blood pressure reading of 222/107—which, according to the website of the Mayo Clinic,[2] is within the hypertensive crisis range (Dkt. 17 at p. 3). He further claims that the nurse who took the blood pressure reading "instructed [Harris] that [Bailey] needed to remain in [the medical] department" (Dkt. 17 at p. 3). However, Harris, according to Bailey, screamed "at the top of her voice" that Bailey had to leave, even though the nurse "repeatedly advised her" that Bailey needed to stay (Dkt. 17 at p. 3). Bailey left and talked to a superior officer, who ordered Bailey to return to the medical facility to receive treatment (Dkt. 17 at p. 3). Unit medical records indicate that Bailey got both of his insulin shots on July 14, 2012; that his blood pressure was checked three times on that date; and that he received a 50-milligram dose of Atenolol, a beta blocker, at the prison medical unit (Dkt. 56-1 at pp. 6, 20). Bailey does not mention having a lay-in pass at the July 14, 2012 clinic visit that Harris allegedly interrupted. Bailey filed a grievance against Harris related to the July 14, 2012 incident; and,

---

[2]   http://www.mayoclinic.org/diseases-conditions/high-blood-pressure/expert-answers/hypertensive-crisis/faq-20058491.

-4-

as a result, Harris was "counseled to ensure that offenders receive proper medical care" (Dkt. 56-1 at pp. 154–65).

## II.    THE PLRA, SUMMARY JUDGMENTS, AND QUALIFIED IMMUNITY

### A.    The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Bailey, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Bailey proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per

curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.    Rule 56

Harris has filed a motion for summary judgment. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only

when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*,

-8-

550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Bailey is proceeding pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### C.   Qualified Immunity

Harris has invoked qualified immunity (Dkt. 56 at p. 16). In civil rights actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden shifts to the non-movant to rebut it. *Id.* All inferences are drawn in the non-movant's favor. *Id.*

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may

-9-

analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at 253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

-10-

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III.   HARRIS IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF BAILEY'S CLAIMS.

The record conclusively shows that Bailey cannot recover against Harris.

### A.   Interference with Bailey's medical care

#### 1.   *The applicable standard*

Bailey first seeks relief under 42 U.S.C. § 1983 for what he says was unconstitutional interference with his medical care. In order to obtain relief, Bailey must demonstrate "deliberate indifference to serious medical needs" on the part of Harris. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The deliberate-indifference test has both an objective prong and a subjective one. The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of

facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

The deliberate-indifference standard "is an extremely high standard to meet"—*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)—and it is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

### 2.    *Harris is entitled to qualified immunity.*

Bailey has not carried his burden of rebutting Harris's qualified immunity defense. He has shown neither objective exposure to a substantial risk of serious harm nor Harris's deliberate indifference to such a risk.

#### a.    **Bailey was not harmed.**

As an initial matter, a delay or interruption in the provision of medical care only constitutes an Eighth Amendment violation when the prisoner can show that the delay or interruption "result[ed] in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir.

2006) (quotation marks omitted). Bailey concedes that he did not suffer any harm as a result of the alleged interruptions in his treatment regimen (Dkt. 17 at p. 4), and this concession is fatal to his medical-care claims.[3] *See, e.g., Brandenburg v. Corrections Corp. of America*, No. 13-CV-2288, 2014 WL 31345, at *3 (W.D. La. Jan. 3, 2014) (holding that a three-month delay in provision of insulin was not actionable when the prisoner claimed that he was "at risk for serious and permanent and deadly conditions" due to the delay but did not actually suffer them); *Benford v. Walker*, No. H-10-0570, 2011 WL 1528467, at *3 (S.D. Tex. Apr. 19, 2011) (holding that a four-day delay in provision of insulin was not actionable when the prisoner did not "appear to have suffered any lasting effects"); *see also McDermid v. Garza*, No. 13-CV-3210, 2015 WL 1089863, at *4–5 (D. Colo. Mar. 9, 2015) (holding that a prisoner did not state an Eighth Amendment claim when he did not allege any injury resulting from periodic interruptions of an 18-month course of insulin treatment).

> **b.      Bailey has not shown objective exposure to a substantial risk of serious harm.**

The question of whether the interruptions in Bailey's treatment caused substantial harm is necessarily closely tied to the question of whether the interruptions objectively exposed Bailey to a substantial *risk* of serious harm. Bailey has failed to show that he was ever exposed to such a risk. Diabetes and hypertension are serious medical conditions, of course, and the Court does not take them lightly. But when the prisoner suffering from those

---

[3]      Bailey has not stated a claim for pain suffered during the interruptions. *Cf. Easter v. Powell*, 467 F.3d 459, 461–62, 464–65 (5th Cir. 2006).

conditions is receiving adequate long-term care, not every missed insulin injection or blood pressure check automatically poses a substantial health risk. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003) ("[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."). Rather, Bailey must show that each alleged interruption in his long-term care—for instance, his missing one of two scheduled insulin shots on February 11, 2012—posed a substantial risk of serious harm. *Cf. Perkins v. Schwappach*, 313 Fed. App'x 473, 476 (3d Cir. 2008) (holding that a prisoner adequately alleged that he was experiencing a serious medical need when he stated that he nearly died and required emergency treatment as a result of a particular occasion on which he was denied insulin and other medication). That Bailey was put at substantial risk by the interruptions in his treatment is not, contrary to Bailey's argument, self-evident; in fact, it is apparent that Bailey frequently missed insulin injections while he was at the Darrington Unit. The summary judgment record includes Bailey's medication compliance reports from the unit medical facility for February, May, and July of 2012 (Dkt. 56-1 at pp. 3–7). In those three months alone, there are at least 12 dates on which Bailey only received one insulin shot and at least two dates (July 5, 2012 and July 7, 2012) on which he received none (Dkt. 56-1 at pp. 3–7). During all three of those months, he was supposed to be getting insulin injections twice daily (Dkt. 56-1 at pp. 3–7). That is a total of at least 16 missed injections in three months, with no evidence of any harm, let alone serious

-14-

harm. Bailey's bare claims that he was objectively exposed to a substantial risk of serious harm are too conclusory to defeat Harris's motion for summary judgment.

### c.   Bailey has not shown deliberate indifference.

Since Bailey has not shown that he was ever objectively exposed to a substantial risk of serious harm, he has necessarily failed to show that Harris acted with deliberate indifference to such a risk or that Harris behaved in a manner which no reasonable official could have believed was proper. But the Court further notes that Bailey's evidence fails to rebut Harris's qualified immunity defense irrespective of the objective substantiality of the risk. Bailey alleges that Harris ordered him out of the medical facility on February 11, 2012 before he had gotten his insulin shot. However, it is not clear from Bailey's account of the incident that Harris even knew that Bailey had not received his shot, and regardless there is no evidence either that Bailey was suffering from any ill effects or that Harris knew he was. Bailey's account of the February 19, 2012 incident, when Harris allegedly allowed several other prisoners to get in line ahead of Bailey at the medical facility, similarly fails to carry Bailey's burden: there is simply no evidence that Harris acted with the requisite deliberate indifference.

The July 14, 2012 incident, when Harris allegedly forcefully prevented a nurse from treating Bailey and expelled Bailey from the medical facility when he was experiencing a severe hypertensive episode, sounds a great deal more egregious; but the summary judgment record flatly contradicts Bailey's account in several crucial respects. First, the unit medical

-15-

records indicate that Bailey's blood pressure was nowhere near as high, and his condition nowhere near as emergent, as he says. Bailey claims that his blood pressure was 222/107; but the clinic notes indicate that three readings were taken that day and all three were far below that—specifically, the readings, from earliest to latest, were 148/72, 140/70, and 130/70, and Bailey showed no signs of distress (Dkt. 56-1 at p. 20). Second, neither the medical chart nor the nurse's account of the incident mentions any exchange, much less a heated one, between the nurse and Harris. The medical chart does not mention Harris, by name or by position, at all (Dkt. 56-1 at p. 20). As for the nurse, she gave the following statement to the grievance investigators:

> Mr. Bailey came in for blood pressure check on 7/14/12. Mr. Bailey's blood pressure was elevated. I asked him to go wait in holding area for about 15 mins for recheck. Mr. Bailey returned and stated officer at the door told him he had to leave. To my knowledge he returned at 6:30 p.m. for his b/p recheck. Dkt. 56-1 at p. 161.

Third, the records indicate that the elevation in Bailey's blood pressure shown by the first two readings was attributable to Bailey's own failure to comply with his treatment regimen. Bailey failed on July 14 to take a beta blocker, Atenolol, which he was instructed to take daily and was authorized to keep on his person (Dkt. 56-1 at pp. 19–20). When the prison medical personnel gave Bailey a dose of Atenolol—the same medication that Bailey, again, had on his person—his blood pressure went down to 130/70 and he "was discharged to security in stable condition" (Dkt. 56-1 at p. 20). Because of his failure to take his Atenolol, Bailey was "instructed to be in compliance with medication administration" in the

-16-

future (Dkt. 56-1 at p. 20). In short, Bailey did not need to be treated in the prison's medical facility that day for his elevated blood pressure; he simply needed to take the medicine that he had already been instructed to take and that was already in his possession.

With regard to the July 14, 2012 incident, the Court will disregard Bailey's unsupported, self-serving statements about his medical condition and Harris's conduct. *See Smith*, 456 Fed. App'x at 492; *Lawrence*, 276 F.3d at 197; *Hinsley*, 201 F.3d at 643; *see also Scott*, 550 U.S. at 380. There is no evidence that Harris was deliberately indifferent to a substantial risk of serious harm to Bailey. Even if those statements are not disregarded, Bailey does not dispute the evidence that he received both of his scheduled insulin shots, three blood pressure readings, and medication for his elevated blood pressure (which he could and should have taken on his own anyway) on July 14, 2012; and, again, he has not presented any evidence that any delays in his treatment on that date or any other date caused him any harm.

Harris is entitled to qualified immunity and summary judgment on the medical-care claims.

### E.    Retaliation

#### 1.    *The applicable standard*

Bailey claims that Harris's actions on February 19, 2012 and July 14, 2012 were taken in retaliation for his filing grievances against her (Dkt. 17 at pp. 2–3).[4] To state a claim for

---

[4]    Bailey also mentions an unspecified "activity of retaliation" on May 28, 2012 (Dkt. 17 at p. 2). Bailey filed a grievance saying that Harris "rolled her eyes" at him on that

retaliation, an inmate must establish: (1) that he invoked a specific Constitutional right; (2) that the defendant intended to retaliate against him for his exercise of that right; (3) a particular retaliatory adverse act; and (4) that, but for the defendant's retaliatory motive, the complained-of adverse act would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (quotation marks omitted).

Proving retaliation entails carrying a "significant burden" and presenting more than mere conclusory allegations, and the court must "carefully scrutinize" the claim "with skepticism[.]" *Woods*, 60 F.3d at 1166. The inmate must present direct evidence of motive or, barring that, allege a chronology of events from which retaliation may be plausibly inferred. *Id.* And the prisoner's allegations of causation must show more than "temporal proximity alone[.]" *Reese v. Skinner*, 322 Fed. App'x 381, 383 (5th Cir. 2009). For example, the plaintiff in *Hart v. Hairston*, 343 F.3d 762, 763–65 (5th Cir. 2003), created a fact question on motive and causation by showing that he wrote a letter to an administrator accusing a correctional officer of trying to mislead state inspectors and that the officer then filed a disciplinary charge against the plaintiff specifically accusing him of making false statements in the letter; the plaintiff's evidence could have supported a finding that the

---

date—presumably, this was the retaliatory activity (Dkt. 1-1 at p. 10). Harris's eye-rolling is inconsequential and will not support a claim for retaliation. *See Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Bailey received both of his insulin shots on May 28, 2012 (Dkt. 56-1 at p. 5).

disciplinary charge was retaliation for the letter. Even if all of the elements are met, however, the protection from retaliation does not extend to "inconsequential actions" by prison officials—"[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

### 2.    *Harris is entitled to summary judgment.*

Bailey presents no evidence whatsoever of either retaliatory motive or causation. He offers only bare allegations of retaliation, typified by his statement that he "feels that if it were'nt [sic] for the purpose of a RETALIATORY MOTIVE, the incident complained of would not have occured [sic]" (Dkt. 17 at p. 3). These are simply statements of Bailey's personal belief that Harris retaliated against him, and the chronology of events alleged by Bailey does not on its own allow for a plausible inference of retaliation by Harris.

Moreover, Harris's alleged retaliatory acts were inconsequential. The one possible exception is the occasion on which Bailey claims that Harris forcefully prevented a nurse from treating him when he had a blood pressure reading of 222/107; but, as discussed above, the summary judgment evidence overwhelmingly indicates that Harris did no such thing. In any event, it is certainly clear from the record that nothing Harris did deterred Bailey, a prolific grievance writer, from exercising his rights. (Dkt. 17 at pp. 4–8; Dkt. 56-1 at pp. 74, 82, 90, 100, 110, 125, 135, 141, 149, 172). Bailey wrote at least five grievances after July 14, 2012, the date of Harris's last alleged retaliatory act—and four of them were against Harris

(Dkt. 17 at pp. 4–8; Dkt. 56-1 at p. 172). Notably, the grievances in the record almost without exception accuse the named correctional officers of harassment, retaliation, or interference with Bailey's medical treatment (Dkt. 17 at pp. 4–8; Dkt. 56-1 at pp. 74, 82, 90, 100, 110, 125, 135, 141, 149, 172).

Harris is entitled to summary judgment on Bailey's retaliation claims.

## IV.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.    Defendant Elizabeth Harris's motion for summary judgment (Dkt. 56) is **GRANTED**, and all claims against her are dismissed with prejudice.

2.    Any other pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas on _Febuary 27_, 2017.

_GEORGE C. HANKS, JR._
UNITED STATES DISTRICT JUDGE